**PEOPLES RIGHTS ORGANIZATION, et al., Plaintiffs,**

v.

**CITY OF COLUMBUS, et al., Defendants.**

No. C–2–95–269.

United States District Court, S.D. Ohio, Eastern Division.

March 21, 1996.

Donald Carl Brey, Chester Willcox & Saxbe, Columbus, OH, Stephen P. Halbrook, Fairfax, VA, for Peoples Rights Organization, Inc., Gerald L. Smolak, Paul Dennis Walker.

Glenn Brooks Redick, City Attorney's Office, Columbus, OH, for City of Columbus, Ronald J. O'Brien.

*OPINION and ORDER*

BECKWITH, District Judge.

Plaintiffs, Peoples Rights Organization and two of its members, initiated this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution by filing a Complaint seeking declaratory and injunctive relief. Plaintiffs contend that Columbus City Codes §§ 2323.11, 2323.31, and 2323.32 are unconstitutionally "vague, violate the right to due process of law, create unreasonable discriminations [sic], and deny the equal protection of the laws." Complaint, ¶ 1. This matter is now before the Court on Plaintiffs' motion for preliminary injunction and the trial of this matter on the merits, which have been consolidated by stipulation of the parties.

### 1. Background

The ordinances in question prohibit the sale, transfer, possession, and acquisition of certain weapons, defined as assault weapons, and large capacity magazines. The ordinances further prescribe criminal penalties for violation of the prohibitions on sale, transfer, possession, and acquisition.

The relevant portions of the ordinances in question are as follows:

**2323.11 Definitions**

As used in Chapter 2323 of the Columbus City Codes:

\* \* \* \* \* \*

(E) "Automatic firearm" means any firearm designed or specifically adapted to fire a succession of cartridges with a single function of the trigger. "Automatic firearm" also means any semiautomatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges.

(F) "Large capacity magazine" means a box, drum, clip or other container which holds more than twenty rounds of ammunition to be fed continuously into a semiautomatic firearm, except a magazine designed to hold only .22 caliber rimfire cartridges.

(G) "Assault weapon" means:

(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;

(2) any semiautomatic shotgun with a magazine capacity of more than six rounds;

(3) any semiautomatic handgun that is:

(a) a modification of a rifle described in division (a)(1), or a modification of an automatic firearms [sic]; or

(b) originally designed to accept a detachable magazine with a capacity of more than 20 rounds;

(4) any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2) or (3) of this section;

(5) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, or any combination of parts from which an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, [sic] may be readily assembled if those parts are in the possession or under the control of the same person.

**2323.31 Unlawful Possession of Assault Weapons**

(A) No person shall sell, offer or display for sale, give, lend or transfer ownership of, acquire or possess any assault weapon.

(B) This section does not apply:

\* \* \* \* \* \*

(3) To any person who lawfully possessed an assault weapon and who registered that assault weapon pursuant to former Columbus City Code Section 2323.05 in 1989.

**2323.32 Unlawful Possession of a Large Capacity Magazine**

(A) No person shall knowingly possess a large capacity magazine.

\* \* \* \* \* \*

(B)(2) This section does not apply to a large capacity magazine which belongs to a

firearm or which is possessed by the owner of a firearm which is registered with federal authorities under the National Firearms Act (26 U.S.C.A. Secs. 5801–5871), or if the large capacity magazine belongs to or is part of an assault weapon which has been registered under Section 2323.05(C) or has been rendered totally inoperable or inert and the firearm cannot be readily rendered operable or activated and which is kept as a trophy, souvenir, curio or museum piece.

Plaintiffs contend that the ordinances violate their constitutional right to equal protection of the laws inasmuch as they include "grandfather" clauses, §§ 2323.31(B)(3) and 2323.32(B)(2), that irrationally discriminate against the owners of certain weapons and magazines. Complaint, ¶¶ 34, 36. They also contend that the provisions violate their right to due process of law because they "condition the fundamental constitutional right to have arms on prior compliance with an unconstitutional ordinance." Complaint, ¶ 40. Specifically, Plaintiffs assert that "[p]ersons who registered firearms pursuant to the ordinance, which was declared void by *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250 (6th Cir.1994), may continue to exercise their right to keep such firearms," while "[p]ersons who did not do so ... may not continue to exercise their right to keep such firearms." Complaint, ¶ 40. Finally, Plaintiffs allege that the ordinances are unconstitutionally vague in that the manner in which they define "assault weapon" is not sufficiently clear to provide citizens a meaningful warning that their behavior is prohibited. Plaintiffs ask the Court to declare the ordinances unconstitutional and to enjoin their enforcement.

The Court has reviewed the memoranda submitted by the parties and has heard argument by counsel concerning the contested ordinances. In addition, the Court has reviewed the parties' memoranda concerning the issue of standing.

### 2. Standing

■ The requirement of standing "assure[s] the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629–30, 57 L.Ed.2d 595 (1978). In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the United States Supreme Court explained that the "irreducible constitutional minimum of standing" includes three elements:

(1) the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) a causal connection must exist between the injury and the conduct of which the plaintiff complains; and

(3) the plaintiff must demonstrate the likelihood, and not merely the speculative possibility, that the injury will be redressed by the requested relief.

*Id.* at 559–60, 112 S.Ct. at 2136. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990)).

In this case, the Court concludes that the two individual Defendants, Gerald L. Smolak and Paul Dennis Walker, have established the elements of standing. Both Smolak and Walker possess weapons that may be identified as assault weapons by the ordinances in question. Smolak Affidavit, ¶ 3; Walker Affidavit, ¶ 15. Both men fear that they will be subject to prosecution under the ordinances in question. Plaintiff Walker wishes to purchase a magazine that holds thirty rounds for use with his vintage semiautomatic rifle and contends that he fears prosecution under the ordinances in question in the event that he should purchase the desired magazine. Walker Affidavit, ¶ 20.

"A plaintiff who challenges a statute [prior to its enforcement against him] must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494,

94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974)). "But '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Id.* (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663–64, 67 L.Ed. 1117 (1923)). "When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Id.* (quoting *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo criminal prosecution as the sole means of seeking relief.'" *Id.* (quoting *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973)).

Neither party suggests that Plaintiffs Smolak and Walker do not satisfy the second and third constitutional requirements of standing. Their alleged imminent injury, prosecution under the Columbus City Codes for possession of assault weapons and/or large capacity magazines, is causally connected to the enactment of the contested ordinances. Moreover, the requested relief would redress their injury. In *Lujan v. Defenders of Wildlife,* the United States Supreme Court observed that

> [w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Id.* 504 U.S. at 561, 112 S.Ct. at 2137 (emphasis in original). The sole question is whether Plaintiffs Smolak and Walker have alleged an injury in fact sufficient to accord standing.

Having considered the Plaintiffs' alleged injury in light of the pronouncements of the Supreme Court regarding pre-enforcement standing to challenge a criminal statute on constitutional grounds, the Court concludes that Plaintiffs Smolak and Walker do, indeed, have standing to challenge the ordinances that are the subject of this litigation.

Smolak and Walker have "demonstrate[d] a realistic danger of sustaining a direct injury as a result of the ... operation or enforcement [of the ordinances]." *United Farm Workers National Union,* 442 U.S. at 298, 99 S.Ct. at 2308. They have alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the ordinances, and there exists a credible threat of prosecution thereunder. Accordingly, they should not be required to await and undergo criminal prosecution as the sole means of seeking relief. *Id.*

■ The Court further concludes that Plaintiff People's Rights Organization has standing to challenge the ordinances on behalf of its members.

> Even in the absence of injury to itself an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and as long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2212, 45 L.Ed.2d 343 (1975). Associational standing is more readily demonstrated in actions for declaratory or injunctive relief, like the present action, than in actions for

damages, and when the association is a voluntary membership organization. *Id.* at 515, 95 S.Ct. at 2213–14; *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 342, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977).

The United States Court of Appeals for the Fifth Circuit has condensed the Supreme Court's pronouncements on associational standing into a three part inquiry:

(1) the association must demonstrate that its members would have standing to sue in their own right;

(2) it must demonstrate that the interests it seeks to protect are germane to its organizational purpose; and

(3) it must demonstrate that neither the claims nor the relief requested requires the participation of individual members in the lawsuit.

*Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees,* 19 F.3d 241, 244 (5th Cir.1994).

Plaintiff People's Rights Organization has demonstrated that its members would have standing to sue in their own right. Plaintiffs Smolak and Walker are representative of Plaintiff People's Rights Organization's members. The Court has concluded that Smolak and Walker have standing to challenge the ordinances in question in their own right. People's Rights Organization has also demonstrated that the interests it seeks to protect in this lawsuit, the constitutional rights of its members, are germane to its organizational purposes. The purposes of People's Rights Organization include the protection of individual constitutional rights. Complaint, ¶ 4. Finally, the Court concludes that the individual participation of each of Plaintiff's members who might be affected by the challenged ordinances is dispensable. Because this is an action for declaratory and injunctive relief, the benefit of Plaintiffs' success in this action will inure to all members of People's Rights Organization who would have had individual standing to challenge the ordinances. Their participation as individuals is not necessary. The Court concludes, therefore, that Plaintiff People's Rights Organization has standing to bring this action. Hav-

ing concluded that the Plaintiffs satisfy the constitutional requirements of standing, the Court will address each of their challenges to the ordinances in question.

### 3. *Equal Protection*

■ Plaintiffs contend that the two "grandfather" clauses in the challenged ordinances, §§ 2323.31(B)(3) and 2323.32(B)(2), violate their equal protection rights inasmuch as they irrationally discriminate among persons who own weapons that may be defined as assault weapons under the ordinances. The "grandfather" clauses except from the prohibitions of the statute people who registered their weapons under former Columbus City Codes § 2323.05 in 1989.

Columbus' former assault weapons ordinances, former §§ 2323.01, *et seq.,* were enacted in 1989 and defined "assault weapon" as one of thirty-four specific rifles, three specific shotguns, and nine specific pistols, or "[o]ther models by the same manufacturers with the same action design that have slight modifications or enhancements." Former § 2323.01(I). Former § 2323.05(B) provided as follows: "No person shall knowingly possess an assault weapon, unless that weapon is registered pursuant to paragraph (C) of this section." Section 2323.05(C) provided as follows: "Any person who lawfully possesses an assault weapon prior to October 31, 1989 shall register that firearm with the Department of Public Safety, License Section, between November 1, 1989 and November 30, 1989." The individual Plaintiffs and other members of People's Rights Organization own weapons that were not registered pursuant to former § 2323.05(C).

In 1994, the United States Court of Appeals for the Sixth Circuit determined that § 2323.05 was unconstitutionally vague in the manner in which it defined "assault weapon." *Springfield Armory, supra.* The court concluded that the ordinance was "fundamentally irrational and impossible to apply consistently by the buying public, the sportsman, the law enforcement officer, the prosecutor or the judge." *Id.* at 252. The court found that the ordinance provided "no reasoned basis for making a determination one way or

the other." *Id.* at 253. Finally, the court concluded that "[n]othing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage." *Id.*

In response to the decision of the Court of Appeals, the City of Columbus enacted the ordinance that is the subject of the instant action. Plaintiffs assert that, by inserting the "grandfather" clauses of §§ 2323.31(B)(3) and 2323.32(B)(2), the City has essentially reenacted former § 2323.05(C). They claim that the "grandfather" clauses violate equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from "treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992) (citing *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). "As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'" *Id.* (quoting *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961)). When a statute does not discriminate based upon a suspect classification, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* (citing *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3253–54, 87 L.Ed.2d 313 (1985); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)); *see also Gregory v. Ashcroft,* 501 U.S. 452, 466, 111 S.Ct. 2395, 2404, 115 L.Ed.2d 410 (1991).

With respect to such statutes, the Equal Protection Clause is satisfied so long as the following three criteria are satisfied:

(1) there is a plausible policy reason for the classification;

(2) the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker; and

(3) the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger,* 505 U.S. at 10–11, 112 S.Ct. at 2332 (citing *Cleburne,* 473 U.S. at 446, 105 S.Ct. at 3257–58; *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981); *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980)). The third criteria, requiring a rational relationship between the classification and its goal, does not provide "a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2100–01, 124 L.Ed.2d 211 (1993). Non-suspect classifications are "accorded a strong presumption of validity." *Heller v. Doe,* 509 U.S. 312, 318–19, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) (citing *Beach Communications,* 508 U.S. at 307–08, 113 S.Ct. at 2098). Such classifications "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications,* 508 U.S. at 313, 113 S.Ct. at 2101. "A statutory classification fails rational basis review only when it 'rests on grounds wholly irrelevant to the achievement of the State's objective.'" *Heller v. Doe,* 509 U.S. at 324, 113 S.Ct. at 2645 (quoting *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 390, 58 L.Ed.2d 292 (1978)). A statute that is not well-tailored to accomplish the governmental objectives it was designed to serve but, nevertheless, is rationally related in some fashion to those objectives survives equal protection scrutiny. *Corrigan v. Newaygo,* 55 F.3d 1211, 1217 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 379, 133 L.Ed.2d 303 (1995).

In this case, Defendants assert that the objective of the two contested "grandfather" clauses is to protect the ownership interests of those persons who possessed proscribed weapons prior to Columbus' attempts to ban assault weapons in 1989. *See* Defendants'

Memorandum Contra Motion for Preliminary Injunction. Applying the three criteria set forth by the Supreme Court in *Nordlinger,* the Court concludes that the "grandfather" clauses of §§ 2323.31(B)(3) and 2323.32(B)(2) do not violate Plaintiffs' equal protection rights.

A plausible policy justification supports the challenged classification. Indeed, Plaintiffs apparently agree that protection of the ownership interests of persons who possessed assault weapons prior to the ban is a legitimate policy justification for the inclusion of a "grandfather" clause in the ordinances. Plaintiffs argue, however, that the "grandfather" clause, as it was enacted, unfairly discriminates.

The second *Nordlinger* criterion is that the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker. *Nordlinger,* 505 U.S. at 10–11, 112 S.Ct. at 2332. This criterion requires very little of the entity enacting the ordinance or statute. In order to pass constitutional muster, the classification must be "apparently" based upon some fact or facts that the legislative body "rationally may have considered to be true."

In this case, the legislative fact apparently supporting the "grandfather" clauses' classification is that assault weapon owners who possessed their weapons prior to Columbus' first attempt to ban assault weapons had an opportunity to register those weapons and, thus, to avoid prosecution under either the initial assault weapon ordinances or the current ones. The Columbus City Council may rationally have believed that fact to be true because the initial ordinances, which were held to be unconstitutionally vague in *Springfield Armory, supra,* provided for registration. Accordingly, the second *Nordlinger* criterion is satisfied.

The third criterion set forth by the Supreme Court in *Nordlinger* requires that the relationship of the classification to its goal not be so attenuated as to render the distinction arbitrary or irrational. *Nordlinger,* 505 U.S. at 10–11, 112 S.Ct. at 2332. As this Court has observed, the Supreme Court and the United States Court of Appeals for the Sixth Circuit have further clarified this third criterion to give courts some guidance in determining how attenuated a relationship may be without rendering the challenged classification arbitrary or irrational.

This Court is not to judge the wisdom, fairness, or logic of the City Council's legislative choices. *Beach Communications,* 508 U.S. at 311–12, 113 S.Ct. at 2100–01. Accordingly, it is not for this Court to decide whether City Council fairly chose not to protect the ownership interests of those persons who purchased proscribed weapons after the November 1989 enactment of the original ordinances and before the enactment of the ordinances now in question. Nor may this Court question the logic of protecting the interests only of those assault weapons owners who complied with an ordinance, former Columbus City Code § 2323.05, which has been declared unconstitutionally vague. Rather, the Court may only find the challenged classification to be unconstitutional if it "rests on grounds wholly irrelevant to the achievement of the . . . objective." *Holt Civic Club,* 439 U.S. at 71, 99 S.Ct. at 390.

The Court concludes that the "grandfather" clauses at issue are not well-tailored to achieve the City's objective of protecting the ownership interests of those assault weapon owners who possessed their weapons prior to Columbus' first attempt at banning assault weapons. The initial ordinances were unconstitutionally vague and did not provide sufficient notice to weapons owners as to which weapons were defined as assault weapons. Accordingly, an owner of a weapon might reasonably have thought that her weapon was not covered and have chosen not to register the weapon in 1989 only to find that the weapon is banned by the current version of the ordinances. The Court concludes, nevertheless, that the "grandfather" clauses' classification does not violate the Equal Protection Clause.

As the Court has observed, an ordinance that is not well-tailored to accomplish the governmental decisionmaker's objective may, nevertheless, satisfy the third criterion set forth in *Nordlinger.* The ordinance survives constitutional scrutiny as long as it is ration-

ally related in some fashion to the governmental objective. *Corrigan,* 55 F.3d at 1217.

■ The classification among weapons owners based upon their registration or failure to register their weapons in 1989 is not wholly irrelevant to the objective of protecting the ownership interests of those owners who possessed their weapons prior to Columbus' first attempt to ban assault weapons. The Columbus City Council could rationally have believed that the "grandfather" clauses would protect those interests. The City need not establish that the classification protects the ownership interest of every person who possessed an assault weapon prior to November 1989. Rather, the ordinances survive equal protection scrutiny as long as the classification is in some fashion relevant to the City's goal. Having concluded that the ordinances satisfy that requirement, this Court's equal protection analysis is concluded.[1]

### 4. *Vagueness*

Plaintiffs also challenge Columbus City Codes § 2323.31(A), the provision that prohibits the sale, transfer, acquisition, or possession of an assault weapon as defined in Columbus City Codes § 2323.11(G). The basis for Plaintiffs' challenge is that the definition of "assault weapon" contained in § 2323.11(G) is unconstitutionally vague.

Columbus City Codes § 2323.11(G) defines "assault weapon" as

(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;

(2) any semiautomatic shotgun with a magazine capacity of more than six rounds;

(3) any semiautomatic handgun that is:

(a) a modification of a rifle described in division (a)(1), or a modification of an automatic firearms [sic]; or

(b) originally designed to accept a detachable magazine with a capacity of more than 20 rounds;

(4) any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2) or (3) of this section;

(5) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, or any combination of parts from which an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, may be readily assembled if those parts are in the possession or under the control of the same person.

Plaintiffs challenge the definition of "assault weapon" on the following grounds:

(1) Subsection (G)(1) defines a weapon in terms of its ability to accept a detachable magazine with a capacity of twenty or more rounds without a requirement that such a magazine exist, that the owner of the weapon know of the existence of such a magazine, or that the owner of the weapon possess such a magazine;

(2) Subsection (G)(2) defines a shotgun in terms of the number of rounds its magazine will accommodate without identifying the length of the rounds;

(3) Subsection (G)(3) defines a handgun in terms of characteristics that may be unknown to the ordinary owner;

(4) Subsection (G)(4) incorporates the vague definitions of subsections (G)(1), (2), and (3) and uses vague terminology to define "assault weapon"; and

(5) Subsection (5) defines weapons parts in terms of whether they "may" be assembled into an assault weapon without identifying the level of skill of the person doing the assembling or the

---

1. Plaintiffs also assert that the issue of whether the "grandfather" clauses are constitutional was decided in *Springfield Armory, infra,* and that Defendants are precluded by the doctrine of *res judicata* from relitigating that issue. Plaintiffs' contention is without merit. The City has not reenacted any portion of the 1989 ordinances, as Plaintiffs argue, but has defined a class for "grandfather" clause protection that is identical to the class protected by the "grandfather" clause in the original ordinances. No court has ruled on the issue of whether the protection of the class defined by the "grandfather" clauses in the two ordinances violates the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the doctrine of *res judicata* does not bar litigation of that issue in this case.

amount of effort to be utilized by that person, rendering the term "may" unconstitutionally vague.

## A. *Vagueness Standard*

◼ In *Springfield Armory, supra,* the United States Court of Appeals for the Sixth Circuit summarized the Supreme Court's vagueness jurisprudence as follows:

The Supreme Court has stated very general standards for evaluating whether a statute is unconstitutionally vague:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted). In addition, "[t]he requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values ... and permits meaningful judicial review," *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984), but the Court has also said that a statute is void only if it so vague that "no standard of conduct is specified at all." *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

At times the Court has suggested that a statute that does not run the risk of chilling constitutional freedoms is void on its face only if it is impermissibly vague in all its applications. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), but at other times it has suggested that a criminal statute may be facially invalid even if it has some conceivable ap-

plication. *Kolender v. Lawson,* 461 U.S. 352, 358–59 n. 8, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193. When criminal penalties are at stake, as they are in the present case, a relatively strict test is warranted. *Id.* at 499, 102 S.Ct. at 1193.

*Springfield Armory,* 29 F.3d at 251–52.

◼ The Supreme Court's decisions provide the following guidance: the level of scrutiny applied to a statute challenged for vagueness is heightened when a violation of the statute may result in a criminal penalty and when the statute does not include a scienter requirement. *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858; *Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193–94. *See also Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, ——, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994). The ordinances in question provide criminal penalties for their violation. Furthermore, the Court concludes that Columbus City Codes § 2323.31(A) does not include a scienter requirement.

Section 2323.31(A) provides that "[n]o person shall sell, offer or display for sale, give, lend or transfer ownership of, acquire or possess any assault weapon." The ordinance contains no explicit scienter requirement. The Court need not attempt to cajole an implicit scienter requirement out of the ordinance inasmuch as the Columbus City Council clearly did not intend to include one.

Columbus City Codes § 2323.32(A), which immediately follows § 2323.31 and which was enacted on the same date, provides as follows: "No person shall knowingly possess a large capacity magazine." Had the City Council intended to include a scienter requirement in § 2323.31(A), it would surely have done so, as it did in the succeeding section.

In light of the fact that § 2323.31 includes criminal penalties for its violation and does not include a scienter requirement, the Court must apply a heightened level of scrutiny in

considering Plaintiffs' challenge to the ordinance on void-for-vagueness grounds. The appropriate level of scrutiny for an ordinance that imposes criminal penalties requires the Court to examine whether the ordinance "mark[s] boundaries sufficiently distinct for judges and juries to administer the law in accordance with the will" of the governmental decisionmaker. *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877 (1947). In considering an ordinance without a scienter requirement, the Court must recognize that in "the absence of a scienter requirement ..., the statute is little more than 'a trap for those who act in good faith.'" *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685–86, 58 L.Ed.2d 596 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524, 62 S.Ct. 374, 378–79, 86 L.Ed. 383 (1942)). Because Plaintiffs' challenge to § 2323.31(A) is based · upon the asserted vagueness of the definitions of "assault weapon" in § 2323.11(G), the Court will apply the standards set forth above to each of the challenged subsections of § 2323.11(G).

### B. *Subsection (G)(1)*

■ Plaintiffs contend that subsection (G)(1) is unconstitutionally vague in that it defines "assault weapon" in terms that do not provide "sufficient information to enable a person of average intelligence to determine whether a weapon" is included. *See Springfield Armory*, 29 F.3d at 253. Specifically, Plaintiffs challenge the phrase "that accepts a detachable magazine with a capacity of 20 rounds or more." Plaintiffs observe that the ordinance does not specify whether the possessor of the weapon must also possess a large capacity magazine that the weapon will accept. The ordinance also fails to indicate whether a large capacity magazine for the weapon must exist or whether the weapon is an assault weapon so long as it would accept a large capacity magazine if one did exist. Plaintiffs observe that, in the absence of a scienter requirement, the statute could result in the imposition of criminal penalties upon the owner of a rifle or carbine that accepts a large capacity magazine, even though the owner does not own such a magazine and does not know that such a magazine exists.

In his affidavit, Plaintiff Smolak states that he owns a hunting rifle that has a detachable magazine with a capacity of four rounds. Smolak Affidavit, ¶¶ 3 and 4. Smolak states that he has "never possessed or seen any other magazine that would fit this rifle." *Id.*, ¶ 4. He states that his "rifle would accept a detachable magazine with a capacity of 20 rounds or more if one has ever been manufactured." *Id.*, ¶ 8.

Plaintiff Walker states that he owns a semiautomatic rifle that has a detachable magazine with a capacity of fifteen rounds. Walker Affidavit, ¶ 15. A thirty round magazine for Walker's rifle has been manufactured. *Id.* Walker states "I have no way of knowing whether it is lawful to possess my M1 carbine with a 5 or 15 round magazine in the City of Columbus." *Id.*, ¶ 16.

The Court agrees with Plaintiffs that the definition of "assault weapon" in Columbus City Codes § 2323.11(G)(1) is unconstitutionally vague. Because § 2323.31(A) does not include a scienter requirement, the ordinance as written is a trap for the owner of a rifle or carbine who does not own a large capacity magazine and is not aware that one exists. In essence, the ordinance is a strict liability criminal statute that does not provide sufficient guidance to the weapon owner, potential weapon owner, judge, jury, or law enforcement officer.

The ordinance does not enable the person of average intelligence to determine whether his rifle or carbine is an assault weapon. Rather, anyone who possesses a semiautomatic center fire rifle or carbine that accepts a detachable magazine is subject to prosecution under § 2323.31(A) if a large capacity magazine exists anywhere that fits the weapon, regardless of the weapon owner's complete lack of knowledge of the existence of that magazine. In essence, the ordinance appears to place all owners of semiautomatic center fire rifles and carbines with detachable magazines in jeopardy of prosecution in the event that a compatible large capacity magazine is discovered or manufactured. The Court assumes that the Columbus City Council did not intend that result. If it had, it would have proscribed possession or trans-

fer of any semiautomatic center fire rifle or carbine that accepts a detachable magazine.

The Court further assumes that the City Council intended to ban more than the possession of a semiautomatic center fire rifle or carbine together with a detachable large capacity magazine. The Court bases that assumption on the fact that the City Council enacted a separate ordinance, § 2323.32, which prohibits possession of a large capacity magazine. Obviously, the intention was to criminalize possession of the weapon, whether or not the owner also possesses a compatible large capacity magazine. In drafting the ordinance without a scienter requirement, however, the Columbus City Council created a strict criminal liability ordinance without sufficient information to adequately warn persons who are subject to the ordinance of the conduct that is proscribed. Accordingly, the conclusion that Columbus City Codes § 2323.31(A) is unconstitutionally vague as it applies to rifles and carbines, through § 2323.11(G)(1), is inescapable.

### C. Subsection (G)(2)

■ The Court reaches a different conclusion with respect to § 2323.31(A) as it applies to semiautomatic shotguns through § 2323.11(G)(2). Subsection (G)(2) defines an assault weapon as "any semiautomatic shotgun with a magazine capacity of more than six rounds." Plaintiffs argue that the ordinance is unconstitutionally vague in its application to semiautomatic shotguns inasmuch as it does not define the length of round to be used in determining whether the weapon's magazine has a capacity of more than six rounds. The Court does not find the definition contained in § 2323.11(G)(2) to be unconstitutionally vague.

Plaintiffs contend that "[s]ince it does not designate the length of the 'rounds' or set forth any other objective criteria, § 2323.11(G)(2) is unconstitutionally vague." Plaintiffs' Motion for Preliminary Injunction, p. 33. The Court finds that the ordinance does provide an objective criterion for determining whether a weapon is banned. Specifically, the ordinance identifies semiautomatic shotguns by the capacity of their magazines. In the absence of any mention of shotgun

rounds of a specific length, the weapon owner or potential weapon owner is warned that a semiautomatic shotgun with a magazine capacity of more than six rounds *of any length* is banned. Accordingly, the ordinance does not lack "sufficient information to enable a person of average intelligence to determine whether a weapon ... [is] within the ordinance's coverage." *Springfield Armory*, 29 F.3d at 253. The Court concludes that Columbus City Codes § 2323.31(A) is not unconstitutionally vague as it applies to semiautomatic shotguns through § 2323.11(G)(2).

### D. Subsection (G)(3)

■ Subsection (G)(3) of Columbus City Codes § 2323.11 defines "assault weapon" as follows:

(3) any semiautomatic handgun that is:

(a) a modification of a rifle described in division (a)(1), or a modification of an automatic firearms [sic]; or

(b) originally designed to accept a detachable magazine with a capacity of more than 20 rounds.

Because § 2323.11 does not contain a division (a)(1), the Court assumes that the reference to "division (a)(1)" in § 2323.11(G)(3)(a) is intended to refer to § 2323.11(G)(1).

The ordinance bans three classes of semiautomatic handguns. In subsection (G)(3)(a), "assault weapon" is defined as (i) a modification of a rifle described in subsection (G)(1) and as (ii) a modification of an automatic firearm. In subsection (G)(3)(b), "assault weapon" is defined as a semiautomatic handgun originally designed to accept a detachable magazine with a capacity of more than 20 rounds. Plaintiffs assert that each of the three definitions contained in § 2323.11(G)(3)(a) and (b) is unconstitutionally vague.

For the same reasons that support the Court's conclusion that the definition of "assault weapon" contained in § 2323.11(G)(1) is unconstitutionally vague, the Court concludes that the first and third definitions of subsection (G)(3) are void-for-vagueness. The first of the two definitions contained in § 2323.11(G)(3)(a) adopts the vague definition of "assault weapon" contained in

§ 2323.11(G)(1) by banning a semiautomatic handgun that is a modification of a banned rifle. Because the definition of "assault weapon" as a class of rifles and carbines in subsection (G)(1) is vague, the definition of "assault weapon" as a modification of a rifle in that class is equally vague.

The definition of "assault weapon" contained in Columbus City Codes § 2323.11(G)(3)(b) suffers from an identical flaw. By defining an "assault weapon" as a semiautomatic handgun that was originally designed to accept a detachable large capacity magazine, the ordinance fails to provide the person of average intelligence with sufficient information to enable her to determine whether a weapon is within the ordinance's coverage. *See Springfield Armory,* 29 F.3d at 253. *See* analysis of constitutionality of subsection (G)(1) above. In light of the fact that the statute does not contain a scienter requirement, the Court concludes that it does not satisfy constitutional requirements for clarity.

■ The second definition of "assault weapon" contained in § 2323.11(G)(3)(a) presents a different set of issues. There, the Columbus City Council bans semiautomatic handguns that are modifications of automatic firearms. Plaintiffs contend that "a reasonable person has no way to know whether a handgun is a modification of a rifle." Plaintiffs' Motion for Preliminary Injunction, p. 34. In his affidavit in support of Plaintiffs' motion, Plaintiffs' expert Mr. Harold Johnson states as follows:

24. A reasonable person has no way to know whether a handgun is a modification of "an automatic firearms." Does this mean that a specific handgun was converted from an automatic firearm into a semiautomatic firearm? Does it mean that a manufacturer produced a type of automatic firearm, and then produced a modified version of it as a handgun?

25. The confusion is worsened by the fact that Division (E) defines "automatic firearm" in two completely different ways: a firearm which fires "a succession of cartridges with a single function of the trigger" (presumably a machinegun) and also as a "semiautomatic firearm [which fires only once per trigger pull] designed or specially adapted to fire more than thirty-one cartridges without reloading. . . ." A lay person has no way of knowing these things. A firearms expert may have to do extensive research to make this determination, and even then the expert may not find the answer.

26. Regarding the first definition of automatic firearm, a semiautomatic handgun produced by a manufacturer could not, according to federal law as interpreted by the federal Bureau of Alcohol, Tobacco, and Firearms, be a mere "modification" of a machinegun, it would have to be a total redesign, leaving only cosmetic similarities. Regarding the second definition of automatic firearm, a consumer would have no way to know that a semiautomatic handgun he or she possesses and which fires, say, 10 or 15 rounds, is a modification of some other semiautomatic firearm that was "designed or specially adapted" to fire more than 31 rounds.

Defendants offer no support for the contrary position, that the second definition of "assault weapon" in § 2323.11(G)(3)(a) contains sufficient information to enable the person of average intelligence to determine whether a weapon is within the ordinance's coverage. Defendants argue that "when one reads C.C.C. 2323.11(G) which defines assault weapons one can easily understand what is an assault weapon." Defendants' Memorandum Contra Motion for Preliminary Injunction, p. 10. They further contend that the "ordinance as it now exists uses language which a reasonable person can understand." *Id.,* p. 11.

In *Springfield Armory,* 29 F.3d at 253, the United States Court of Appeals for the Sixth Circuit stated that "ordinary consumers cannot be expected to know the developmental history of a particular weapon." The court cited with approval a decision of the Supreme Court of Colorado in which that court stated that "ascertaining the design history and action design of a pistol is not something that can be expected of a person of common intelligence." *Robertson v. Denver,* 874 P.2d 325,

**1268**

335 (Colo.1994). All of the evidence in this case indicates that the average gun owner does not know whether his weapon is a modification of another weapon. That fact is of particular significance in light of the absence of a scienter requirement in Columbus City Codes § 2323.31(A). Indeed, the ordinance creates the "trap for those who act in good faith" that the Supreme Court has recognized as a basis for a finding that an ordinance is void-for-vagueness. *See Colautti,* 439 U.S. at 395, 99 S.Ct. at 685–86. The Court concludes that Columbus City Codes § 2323.31(A) is unconstitutionally vague as it applies to handguns through § 2323.11(G)(3).

### E. *Subsection (G)(4)*

■ Subsection (G)(4) of Columbus City Codes § 2323.11 defines "assault weapon" as "any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2) or (3) of this section." The Court has concluded that the definitions of "assault weapon" contained in subsections (G)(1) and (G)(3) of § 2323.11 are unconstitutionally vague. To the extent that subsection (G)(4) defines an assault weapon as a firearm that may be restored to an assault weapon as defined in subsections (G)(1) and (3), subsection (G)(4) is equally void-for-vagueness. Plaintiffs argue that subsection (G)(4) is unconstitutionally vague in its own right inasmuch as the words "may be restored to" do not provide sufficient information to enable a person of average intelligence to determine whether a weapon is within the ordinance's coverage.

Plaintiff's expert, Harold Johnson, states as follows:

Division (G)(4) defines an "assault weapon" as including "any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2) or (3) of this section." A person has no way to know whether a firearm "may be restored" in this manner, whether it previously was "an operable assault weapon," or what is an assault weapon as defined in the cited divisions. No standard is provided for what "may be restored," such as may be restored by the person in possession, or may be restored by a master gunsmith using

the facilities of a fully-equipped machine shop.

Johnson Affidavit, ¶ 30. Defendants offer no evidence to the contrary. Indeed, Defendants argue only that the "ordinance as it now exists uses language which a reasonable person can understand." Defendants' Memorandum Contra Motion for Preliminary Injunction, p. 11.

The Court agrees with Plaintiffs that the cited language, "may be restored," fails to provide sufficient guidance to the average weapon owner or potential weapon owner. Again, the Court reaches its conclusion in light of the absence of a scienter requirement in Columbus City Codes § 2323.31(A). Given that the ordinance imposes strict criminal liability, the Court concludes that it runs afoul of the constitutional requirement that the statute give fair warning of what is prohibited. Accordingly, the Court concludes that Columbus City Codes § 2323.31(A) is unconstitutionally vague as it applies to assault weapons as defined in § 2323.11(G)(4).

### F. *Subsection (G)(5)*

■ Subsection (G)(5) of Columbus City Codes § 2323.11 defines "assault weapon" as any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, or any combination of parts from which an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, [sic] may be readily assembled if those parts are in the possession or under the control of the same person.

The Court has concluded that the definitions of "assault weapon" contained in subsections (G)(1) and (G)(3) of § 2323.11 are unconstitutionally vague. To the extent that subsection (G)(5) defines an assault weapon as a part or combination of parts designed or intended to convert a firearm into an assault weapon as defined in subsections (G)(1) and (3), subsection (G)(5) is equally void-for-vagueness. Plaintiffs contend that the second portion of subsection (G)(5) is vague in its own right inasmuch as the words "may readily be assembled" do not provide sufficient information to enable the person of

average intelligence to determine whether a part or combination of parts is within the ordinance's coverage.

Plaintiffs' expert, Harold Johnson, states as follows:

> An ordinary person has no way to know whether a specific part or parts was [sic] so designed, how much time is included in "readily," by who [sic] parts "may be readily assembled," or what is an assault weapon. Once again, no standard is provided for what "may be readily assembled," such as may be readily assembled by the person in possession, or may be readily assembled by a master gunsmith using the facilities of a fully-equipped machine shop.

Johnson Affidavit, ¶ 31. Defendants offer no evidence to the contrary. They simply argue that the ordinance provides sufficient guidance to the person of reasonable intelligence. Defendants' Memorandum Contra Motion for Preliminary Injunction, p. 11.

Again, the Court concludes that the language of the statute is not sufficiently clear to provide fair warning to the person of average intelligence. The Court reaches this conclusion in light of the fact the Columbus City Codes § 2323.31(A) contains no scienter requirement. Pursuant to one of the interpretations to which it is susceptible, the ordinance creates strict criminal liability for possession of a part, even though the possessor has no knowledge that the part may be used in the assembly of an assault weapon by an expert gunsmith. The Columbus City Council did not likely intend to create such liability; nevertheless, the ordinance will bear such an interpretation. The Court concludes that Columbus City Codes § 2323.31(A) is unconstitutionally vague as it applies to

(i) parts or combinations of parts designed or intended to convert a firearm into an assault weapon as defined in subsections (G)(1) or (G)(3); and

(ii) parts or combinations of parts from which an assault weapon as defined in subsections (G)(1), (G)(2), or (G)(3) may be readily assembled.

### 5. Due Process

Plaintiffs allege that Columbus City Codes §§ 2323.11, 2323.31, and 2323.32 violate the Due Process Clause of the Fourteenth Amendment. The basis for Plaintiff's due process claim is that the ordinances act to deny the fundamental right to bear arms guaranteed by the Ohio Constitution.

■ Article I, Section 4 of the Ohio Constitution provides that "[t]he people have the right to bear arms for their defense and security." State-created liberty and property interests, including the right to bear arms for defense and security, are protected by the Due Process Clause. *Mills v. Rogers,* 457 U.S. 291, 300, 102 S.Ct. 2442, 2448–49, 73 L.Ed.2d 16 (1982). *See also Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The right created by the Ohio Constitution is not absolute, however. *Arnold v. Cleveland,* 67 Ohio St.3d 35, 47, 616 N.E.2d 163 (1993). It is subject to reasonable regulation in accordance with the municipality's police power. *Id.* at 46–47, 616 N.E.2d 163. The test is one of reasonableness. *Id.* at 47, 616 N.E.2d 163.

■ "Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community." *Porter v. Oberlin,* 1 Ohio St.2d 143, 149, 205 N.E.2d 363 (1968) (quoting *Allion v. Toledo,* 99 Ohio St. 416, 124 N.E. 237, syllabus (1919)). Like the Ohio Supreme Court in *Arnold,* which was considering Cleveland's assault weapons ban, this Court finds Columbus City Codes §§ 2323.11, 2323.31, and 2323.32 to be "a reasonable exercise of the municipality's police power. The ultimate objective appears to be public safety. To reach this end, the municipality is attempting to limit the accessibility of certain . . . dangerous firearms." *Arnold,* 67 Ohio St.3d at 48, 616 N.E.2d 163. "Clearly, the city would have exceeded its authority . . . and would have violated Section 4, Article I if it had banned *all* firearms." *Id.* at 49, 616 N.E.2d 163. (emphasis in original). Having attempted to ban only one class of weapons,

however, in the legitimate interest of public safety, the City of Columbus has not violated the Due Process Clause of the Fourteenth Amendment.

### 6. *Severability*

 The Court has concluded that Columbus City Codes § 2323.31(A) is unconstitutionally vague as it applies to assault weapons as defined in § 2323.11(G)(1), (G)(3), (G)(4), and some portions of (G)(5). The final issue before the Court is the question of severability. The relevant ordinances do not include a severability clause. The Court observes, however, that the ban contained in § 2323.31(A) as it applies to assault weapons as defined in the portion of § 2323.11(G) that the Court has not found to be unconstitutionally vague is capable of standing alone. Accordingly, the Court concludes that § 2323.31(A) is enforceable as it applies to assault weapons as defined in § 2323.11(G)(2) and to parts or combination of parts that are designed or intended to convert a firearm into an assault weapon as defined in § 2323.11(G)(2). Columbus City Codes § 2323.32 remains enforceable as well.

### 7. *Conclusion*

For the foregoing reasons, Plaintiff's motion for a preliminary injunction, which has been subsumed in the trial of this matter on the merits, is hereby **GRANTED**, in part, and **DENIED**, in part. Section 2323.31(A) of the Columbus City Codes is hereby **DECLARED** to be void-for-vagueness as it applies to assault weapons as they are defined in § 2323.11(G)(1), (G)(3), (G)(4), and the following portions of (G)(5):

(i) parts or combinations of parts designed or intended to convert a firearm into an assault weapon as defined in subsections (G)(1) or (G)(3); and

(ii) parts or combinations of parts from which an assault weapon as defined in subsections (G)(1), (G)(2), or (G)(3) may be readily assembled.

Defendants are hereby **PERMANENTLY ENJOINED** from enforcing Columbus City Codes § 2323.31(A) as it applies to assault weapons as they are defined in those sections. This case is **CLOSED**.

**IT IS SO ORDERED.**