No. 97–934.  VOINOVICH, GOVERNOR OF OHIO, ET AL. v. WOMEN'S MEDICAL PROFESSIONAL CORP. ET AL.  C. A. 6th Cir. Certiorari denied.

JUSTICE THOMAS, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

In 1995, the Ohio General Assembly passed, by an overwhelming majority, House Bill 135, which, among other things, places certain restrictions on abortions after fetal viability. To that end, it provides that—

> "(A) No person shall purposely perform or induce or attempt to perform or induce an abortion upon a pregnant woman if the unborn human is viable, unless . . .
>
> "(1) The abortion is performed or induced or attempted to be performed or induced by a physician, and that physician determines, in good faith and in the exercise of reasonable medical judgment, that the abortion is necessary to prevent the death of the pregnant woman or a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman." Ohio Rev. Code Ann. § 2919.17 (1996).

The District Court enjoined the law as unconstitutional on its face, and a divided panel of the United States Court of Appeals for the Sixth Circuit affirmed. 130 F. 3d 187 (1997). The panel majority held that the statute's limitation of postviability abortions is unconstitutionally vague and that it impermissibly lacks an exception for abortions based upon the "mental health" of the mother. Both of these conclusions are unwarranted extensions of our precedents. Moreover, reflecting our recent reaffirmation of the principle that a State's interests in restricting abortions are at their strongest after viability, see *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 879 (1992) (joint opinion of O'CONNOR, KENNEDY, and SOUTER, JJ.), over three-quarters of the States have in place statutes limiting the reasons for which abortions may be performed late in pregnancy. The vast majority of those statutes do not contain an explicit mental health exception. I would therefore grant the State's petition for certiorari to decide the constitutionality of House Bill 135's postviability restrictions.

The panel majority first found unconstitutional the Ohio statute's requirement that a physician's determination of medical necessity be made "in good faith and in the exercise of reasonable

medical judgment." Ohio Rev. Code Ann. § 2919.17(A)(1) (1996).* Relying on our decision in *Colautti* v. *Franklin,* 439 U. S. 379 (1979), the panel held that the "combination of . . . objective and subjective standards without a scienter requirement" renders the medical necessity exception "unconstitutionally vague." 130 F. 3d, at 205. The panel explained that the statute does not "adequately notify a physician that certain conduct is prohibited; rather, a physician may be held criminally and civilly liable for adhering to his or her own best medical judgment." *Id.,* at 206.

This holding is simply not supported by *Colautti.* The statute in that case required physicians to adhere to a standard of care calculated to preserve the life and health of the fetus if the physician determined that "the fetus is viable" or *"if there is sufficient reason to believe* that the fetus may be viable." 439 U. S., at 391 (emphasis added; internal quotation marks omitted). Our conclusion that this formulation was void for vagueness in no way suggests that the Ohio statute's more specific language—"in good faith and in the exercise of reasonable medical judgment"—is unconstitutionally vague. The statutory language in *Colautti* was ambiguous because it could be read as imposing either a purely subjective or a mixed subjective and objective mental requirement, thereby leaving physicians uncertain of the relevant legal standard. *Id.,* at 391–394. House Bill 135, by contrast, plainly imposes both a subjective and an objective mental requirement, and thus its commands are clear.

The panel majority appears to have been concerned not so much with vagueness, but rather with the statute's lack of a scienter requirement relating to physician determinations about the medical necessity of an abortion. See 130 F. 3d, at 205 (stating that the statute was "especially troublesome" for this reason). Yet as the majority opinion implicitly recognized, see *id.,* at 204–205, we have never held that, in the abortion context, a scienter requirement is mandated by the Constitution. To the contrary, in *Colautti* itself, we explicitly declined to address whether "under a properly drafted statute, a finding of bad faith or some other type of scienter would be required before a physician could be held

---

*If a physician makes such a determination, he must then comply with certain certification requirements, unless he determines, also "in good faith and in the exercise of reasonable medical judgment," that a medical emergency prevents compliance. See Ohio Rev. Code Ann. § 2919.17(B)(2) (1996). The panel majority found this requirement unconstitutional as well.

criminally responsible for an erroneous determination of viability." 439 U. S., at 396. We only stated that the vagueness of the statute at issue was "compounded" by the fact that it lacked a scienter requirement. *Id.*, at 394; cf. 130 F. 3d, at 216 (Boggs, J., dissenting) ("[T]he principle invoked by the Court in *Colautti* . . . is . . . not that the absence of a scienter requirement will 'create' vagueness where it does not otherwise exist"). This Court should grant certiorari rather than allow a constitutional scienter requirement to be imposed under the guise of the void-for-vagueness doctrine.

The panel majority similarly wrenched this Court's prior statements out of context in finding the statute's lack of a mental health exception constitutionally infirm. The panel majority stated that the question whether a maternal health exception may constitutionally be limited to physical health depends upon what we meant in *Casey* by abortions "'necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.'" 130 F. 3d, at 208 (quoting *Planned Parenthood of Southeastern Pa.* v. *Casey, supra*, at 879). To answer this question, however, the panel relied on our conclusion in *Doe* v. *Bolton,* 410 U. S. 179 (1973), that an exception in Georgia's abortion statute for abortions performed when a physician determined, "'based upon his best clinical judgment[,] [that] an abortion [was] necessary,'" *id.*, at 183, was not unconstitutionally vague because the phrase had been construed to allow physicians to consider "'all factors—physical, *emotional, psychological,* familial, and the woman's age—relevant to the well-being of the patient,'" *id.*, at 192 (emphasis added). Our conclusion that the statutory phrase at issue in *Doe* was not vague because it included emotional and psychological considerations in no way supports the proposition that, after viability, a mental health exception *is required as a matter of federal constitutional law.* *Doe* simply did not address that question. As with its void-for-vagueness holding, the panel majority's quarrel with the wishes of the Ohio Legislature on this score appears to be grounded in abortion policy, not constitutional law.

The decision below, moreover, may do more than thwart the will of the Ohio Legislature. The vast majority of the 38 States that have enacted postviability abortion restrictions have not specified whether such abortions must be permitted on mental health grounds. See Brief for A Majority of Members of the

Ohio General Assembly as *Amicus Curiae* 3–4. If the decision below stands, it is likely to create needless uncertainty about the constitutionality of many of those statutes as well. When state statutes on matters of significant public concern have been declared unconstitutional, we have not hesitated to review the decisions in question, even in the absence of a circuit split. See, *e. g.*, *Romer* v. *Evans*, 517 U. S. 620 (1996). This case presents not only this compelling reason for certiorari, but also the ground that our failure to review the decision below may cast unnecessary doubt on the validity of other state statutes. I would grant the State's petition.