**PEOPLES RIGHTS ORGANIZATION, INC., et al., Plaintiffs–Appellees/Cross–Appellants,**

v.

**CITY OF COLUMBUS, et al., Defendants–Appellants/Cross–Appellees.**

Nos. 96–3468, 96–3495.

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1997.

Decided July 15, 1998.

Donald C. Brey, Chester, Hoffman, Willcox & Saxbe, Columbus, OH, Stephen P. Halbrook (argued and briefed), Fairfax, VA, for Plaintiffs–Appellees/Cross–Appellants.

Glenn B. Redick, Chief Litigation Attorney (argued and briefed), Columbus City Attorney's Office, Civil Division, Clumbus, OH, for Defendants–Appellants/Cross–Appellees.

Barbara B. McDowell (briefed), Jones, day, Reavis & Pogue, Washington, DC, for Center To Prevent Handgun Violence and Handgun Control Federation of Ohio.

Sally Brodbeck (briefed), Grafton, OH, for Ohio Constitution Defense Council.

Before: MERRITT, CONTIE, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which CONTIE, J., joined. MERRITT, J. (pp. 539–40), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

In 1994, this circuit invalidated an ordinance of the City of Columbus (hereinafter referred to as Columbus or the City) that banned assault weapons. *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 254 (6th Cir.1994). The ordinance defined an "assault weapon" as any one of thirty-four specific rifles, three specific shotguns, nine specific pistols, or "[o]ther models by the same manufacturer with the same action design that have slight modifications or enhancements." *Id.* at 251 (quoting former Columbus City Codes § 2323.01(I)(4)). We held that the ordinance was unconstitutionally vague. *Id.* We found that "the ordinance is fundamentally irrational and impossible to apply consistently by the buying public, the sportsman, the law enforcement officer, the prosecutor or the judge." *Id.* at 252. We concluded: "The ordinance purports to define 'assault weapons' but in fact it bans only an arbitrary and ill-defined subset of these weapons without providing any explanation for its selections." *Id.*

Following this decision, Columbus amended its ordinance. Columbus City Codes (C.C.C.) section 2323.31(A) provides that "[n]o person shall sell, offer or display for sale, give, lend or transfer ownership of, acquire or possess any assault weapon," and section 2323.32(A) provides that "[n]o person shall knowingly possess a large capacity magazine."[1] Section 2323.11(G) sets forth five definitions of an "assault weapon":

(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;

(2) any semiautomatic shotgun with a magazine capacity of more than six rounds;

---

1. Section 2323.11(F) defines a "large capacity magazine" as "a box, drum, clip or other container which holds more than twenty rounds of ammunition to be fed continuously into a semiautomatic firearm, except a magazine designed to hold only .22 caliber rimfire cartridges."

(3) any semiautomatic handgun that is:

(a) a modification of a rifle described in division (a)(1),[2] or a modification of an automatic firearms [sic]; or

(b) originally designed to accept a detachable magazine with a capacity of more than 20 rounds.

(4) any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2), or (3) of this section.

(5) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (G)(1), (2), or (3) of this section, or any combination of parts from which an assault weapon as defined in (G)(1), (2) or (3) of this section, may be readily assembled if those parts are in the possession or under the control of the same person.

C.C.C. § 2323.11(G)(1)-(5).

The ordinance contains two grandfather clauses which exempt certain firearms and magazines from the ordinance's provisions. Section 2323.31(B)(3) exempts any "assault weapon" that was lawfully possessed and registered pursuant to former Columbus City Codes section 2323.05 in 1989.[3] Section 2323.32(B)(2) exempts a "large capacity magazine" which, among other things, belongs to or is possessed by the owner of a firearm that is registered under the National Firearms Act, 26 U.S.C. §§ 5801–71.

The present case involves a challenge to the amended Columbus ordinance. Plaintiffs, Peoples Rights Organization, Inc. (P.R.O.) and two of its members, have brought a pre-enforcement action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). P.R.O. has large numbers of members who reside in Columbus and who possess, display, sell, lend, or acquire semiautomatic rifles, handguns, shotguns, and parts. The complaint asserts that P.R.O.'s members

are unable to determine whether such firearms and parts are "assault weapons" under the Columbus ordinance. Plaintiffs allege in their complaint that sections 2323.11, 2323.31, and 2323.32 are unconstitutionally vague, violate due process of law, are unreasonably discriminatory, and deny the equal protection of the laws, and they seek declaratory and injunctive relief.

The district court first determined that the case was justiciable. *See Peoples Rights Org. v. City of Columbus*, 925 F.Supp. 1254, 1259–60 (S.D.Ohio 1996). After proceeding to the merits, the district court upheld the two grandfather clauses, finding them to be "in some fashion relevant to the City's goal" of protecting the ownership interests of those owners who possessed their weapons prior to Columbus's first attempt to ban assault weapons in 1989. *Id.* at 1263. However, the court declared the definitions of "assault weapon" in section 2323.11(G)(1), (G)(3), (G)(4), and certain portions of (G)(5) to be unconstitutionally vague. *Id.* at 1270. Therefore, the court enjoined the enforcement of section 2323.31(A) as it applied to "assault weapons" defined in those sections.

We agree with the district court that the controversy is justiciable. With respect to the merits, we uphold the grandfather provision in section 2323.32(B)(2) with the exception of one clause and invalidate the grandfather provision in section 2323.31(B)(3). We also invalidate each of the definitions of "assault weapon" contained in section 2323.11(G)(1)-(5). Hence, we **AFFIRM IN PART AND REVERSE IN PART.**

## I.

### A.

■ The Constitution confines the federal courts to the adjudication of actual "cases"

---

**2.** Because section 2323.11 does not contain a subsection (a)(1), we assume that this is intended to refer to section 2323.11(G)(1).

**3.** Former Columbus City Code § 2323.05(B) provided:

No person shall knowingly possess an assault weapon, unless that weapon is registered pursuant to paragraph (C) of this section. It is intended to ban possession of assault weapons, unless

lawfully possessed prior to the effective date of this ordinance, in which case such assault weapons must be registered.

Former section 2323.05(C), in turn, provided: "Any person who lawfully possesses an assault weapon prior to October 31, 1989 shall register that firearm with the Department of Public Safety, License Section, between November 1, 1989 and November 30, 1989."

and "controversies." U.S. Const. art. III, § 2. As the Supreme Court has explained, the power of the federal judiciary is limited to those disputes "which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *accord National Rifle Ass'n v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997).

 The standing doctrine, for instance, requires that a litigant have suffered an injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In the present case, Plaintiffs have brought a pre-enforcement challenge pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). A declaratory judgment generally is sought before a completed injury-in-fact has occurred. *Magaw,* 132 F.3d at 279; *Pic-A-State Pa., Inc. v. Reno,* 76 F.3d 1294, 1298 (3d Cir.), *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). Nevertheless, when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief. *Magaw,* 132 F.3d at 279; *Bras v. California Pub. Utilities Comm'n,* 59 F.3d 869, 873 (9th Cir.1995), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 748 (1996). Still, it is clear that an individual does not have to await the consummation of threatened injury to obtain preventive relief. Rather, if the injury is certainly impending, that is sufficient. *Babbitt v. United Farm Workers Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

 An association, such as P.R.O., can have standing as a representative of its members. *American Fed'n of State, County & Mun. Employees v. Private Indus. Council,* 942 F.2d 376, 378 (6th Cir.1991). The association must satisfy three requirements to have standing: (1) Its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

 Another doctrine which "cluster[s] about Article III" is ripeness. *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–79 (D.C.Cir. 1982) (Bork, J., concurring). Ripeness focuses on the timing of the action rather than on the parties who bring the suit. *Navegar, Inc. v. United States,* 103 F.3d 994, 998 (D.C.Cir.1997). In *United Steelworkers, Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 194–95 (6th Cir.1988), we outlined the factors that a court must weigh in deciding whether to address the issues presented for review; i.e., the hardship to the parties if judicial review is denied at the pre-enforcement stage, the likelihood that the injury alleged by the plaintiff will ever come to pass, and the fitness of the case for judicial resolution at this stage.[4] In the context of a pre-enforcement challenge, a case is ripe for review "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Magaw,* 132 F.3d at 284 (quoting *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)). Thus, the ripeness requirement aims to prevent the court from entangling itself in "abstract disagreements." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

We shall now analyze the instant case in light of the principles articulated above.

**B.**

 Pursuant to section 2323.31(A) of the Columbus City Codes, "[n]o person shall

---

4. This final criterion—the fitness of the case for judicial review—requires the court to determine whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the claims presented. *National Rifle Ass'n v. Magaw,* 132 F.3d 272, 284 (6th Cir.1997); *United Steelworkers, Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 195 (6th Cir.1988).

sell, offer or display for sale, give, lend or transfer ownership of, acquire or possess any assault weapon." Violation of this ordinance by first-time offenders constitutes a first degree misdemeanor punishable by imprisonment for not more than six months and by a fine of not more than $1,000. C.C.C. § 2301.25.

The complaint alleges that P.R.O. has large numbers of members who lawfully possessed firearms and large capacity magazines in the City before October 31, 1989. According to the complaint, these members did not register such firearms between November 1, 1989, and November 30, 1989, because they were unsure of whether these firearms were "assault weapons" as defined under the prior Columbus ordinance. The complaint asserts that these individuals continue to own and possess (either within or outside of the City) large capacity magazines and firearms, many of which may be defined as "assault weapons" under current Columbus law. The City admits in its answer that it will prosecute individuals "for any known or perceived violations of §§ 2323.31 and 2323.32. These prosecutions would be conducted by defendant Ronald J. O'Brien, in his capacity as the City Attorney."

Gerald Smolak and Paul Walker are the individual plaintiffs in this action.[5] Both are members of P.R.O. Plaintiff Smolak owns a Winchester, semiautomatic, center fire hunting rifle which accepts a detachable magazine. The magazine holds only four rounds. The complaint alleges that this is the only magazine ever produced for this rifle and that Smolak has never possessed or seen any other magazine that would fit this rifle. According to the complaint, Smolak cannot determine whether his rifle constitutes an "assault weapon" under the City's ordinance. In addition, although Smolak possessed this rifle before 1989, he did not register it pursuant to former section 2323.05, because he did not believe it to be an "assault weapon" under the former ordinance. The complaint

alleges that numerous P.R.O. members own rifles similar to Smolak's and are in the same predicament.

Plaintiff Walker, meanwhile, owns an M1 carbine, semiautomatic rifle which accepts a detachable magazine. In a sworn affidavit, Walker states that the M1 carbine, as originally manufactured, "had a detachable magazine which held fifteen (15) cartridges. Later, a thirty-round magazine was manufactured, and five (5) round magazines are also available." The complaint alleges that Walker cannot determine whether his rifle, when possessed only with a five or fifteen round magazine, constitutes an "assault weapon" under the current Columbus ordinance.

Finally, the complaint alleges that numerous members of P.R.O., including Plaintiffs Smolak and Walker, own semiautomatic handguns. The complaint avers that these members have no information that these handguns are modifications or were originally designed from the types of firearms described in section 2323.11(G)(3). However, members have no means of determining the design history of these handguns and thus cannot determine whether they are, in fact, "assault weapons."

Based on the foregoing allegations, we are satisfied that Plaintiffs have standing to bring this action and that this case is ripe for a decision on the merits. It is clear from the complaint the predicament that Smolak and Walker, as well as other members of P.R.O., face. Smolak and Walker possessed their weapons before 1989 but failed to register them. Smolak and Walker contend that, since the former ordinance which purported to define "assault weapons" was unconstitutionally vague, they were not on notice that they should have registered their lawfully possessed firearms.[6] Nevertheless, current section 2323.31 contains no provision for the registration of firearms which were lawfully possessed before 1989 but which were not

---

**5.** Smolak was also a plaintiff in *Springfield Armory v. City of Columbus,* 29 F.3d 250 (6th Cir.1994).

**6.** The complaint also alleges that, since the current definition of "assault weapon" is far broader

than the previous one, Plaintiffs whose firearms currently are, but previously were not, "assault weapons" had no opportunity to register the weapons in 1989.

registered under former section 2323.05. As a result, Plaintiffs Smolak, Walker, and other P.R.O. members who are similarly situated face a clear Hobson's choice. They can either possess their firearms in Columbus and risk prosecution under the City's law, or, alternatively, they can store their weapons outside the City, depriving themselves of the use and possession of the weapons. The City clearly states in its answer that it fully intends to prosecute anyone who violates the provisions of the ordinance.

 In the district court, the City argued that this matter was not justiciable, because Plaintiffs did not allege that they have been charged with a criminal violation of the ordinance, nor had P.R.O. made any claim that it was being prosecuted in some manner. This position is contrary to well-settled law and utterly inconsistent with the policies underlying the Declaratory Judgment Act. As the Supreme Court explained in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967):

> To require them [the petitioners] to challenge these regulations only as a defense to an action brought by the Government might harm them severely and unnecessarily. Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance, neither of which appears here.

*Abbott Labs.*, 387 U.S. 136, 153, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Our recent decision in *Magaw* is not to the contrary. *Magaw* involved a pre-enforcement challenge to the constitutionality of Title XI of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (1994) (the "Crime Control Act"), which prohibited for a period of ten years the manufacture, transfer, or possession of semiautomatic weapons and the transfer or possession of large capacity ammunition feeding devices. 18 U.S.C. § 922(v)(1), (w)(1). We divided the plaintiffs in that case into three groups, because each group presented different concerns with respect to the requirements for standing and ripeness. The first group consisted of manufacturers and dealers of firearms. We found that this group had standing to challenge the constitutionality of the Crime Control Act and that its Commerce Clause and equal protection challenges were ripe for judicial review. *Magaw*, 132 F.3d at 295.[7] These manufacturers and dealers had alleged in their complaint that passage of the Crime Control Act has had a significant impact on the way they conduct their businesses and that compliance with this legislation causes them immediate economic harm. *Id.* at 281. We concluded that "the federal court is not asked to decide a case involving conjectural or hypothetical injury, but one that creates substantial economic hardship, which is direct and immediate, and will be compounded by a refusal of the court to intervene prior to enforcement of the statute." *Id.* at 287.

We held that the remaining two groups of plaintiffs—the individual plaintiffs and the nonprofit gun rights associations—lacked standing to challenge the Crime Control Act. We determined that the individual plaintiffs had failed to demonstrate a cognizable injury-in-fact sufficient to confer standing prior to actual enforcement of the Act against them. *Id.* at 293. We explained that " '[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.' " *Id.* (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir.1983)).

The individual plaintiffs in *Magaw* alleged merely "that they 'desire' and 'wish' to engage in certain possibly prohibited activities, but are 'restrained' and 'inhibited' from doing so." *Id.* These plaintiffs contended that they were unable and unwilling, given the serious penalties involved, to obtain firearms and large capacity ammunition feeding devices

---

7. However, we also found that the group's vagueness challenges to the Act were unfit for review. *Magaw*, 132 F.3d at 291–93; *see infra* at p. 530.

prohibited under the statute. *Id.*[8] Hence, we concluded:

> Plaintiffs' allegations of fear of prosecution, which thwarts their desire to possess or transfer prohibited products, affects not only the named plaintiffs, but also anyone desiring to possess the products proscribed by the Crime Control Act. The Supreme Court has refrained from adjudicating "generalized grievances," pervasively shared. *Valley Forge Christian College [v. Americans United for Separation of Church & State, Inc.],* 454 U.S. [464], 474–75, 102 S.Ct. [752], 759–60 [70 L.Ed.2d 700 (1982)]. The individual plaintiffs' alleged harm amounts to no more than a " 'generalized grievance' shared in substantially equal measure by ... a large class of citizens," and thus does not warrant the exercise of jurisdiction. *Warth v. Seldin,* 422 U.S. [490], 499, 95 S.Ct. [2197], 2205 [45 L.Ed.2d 343 (1975)].

*Id.* at 294.

In the present case, in contrast, Plaintiffs Smolak and Walker and other similarly situated members of P.R.O. are "put ... in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Labs.,* 387 U.S. at 152, 87 S.Ct. 1507. Unlike the federal Crime Control Act, the Columbus ordinance contains an extremely narrow grandfather provision that Plaintiffs Smolak and Walker, as well as other P.R.O. members, have not utilized. Consequently, they risk prosecution and possible imprisonment if they possess their weapons within Columbus, as the City has assured us that it will prosecute those who violate its assault weapons ban. "[W]e believe a citizen should be allowed to prefer 'official adjudication to public disobedience.' " *Magaw,* 132 F.3d at 287 (quoting 13A, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3532.5, at 183–84 (2d ed.1984)).

Finally, we recognize that *Magaw* held that the void-for-vagueness challenges of the manufacturers and dealers were not currently fit for judicial resolution. *See id.* at 291–92. The Crime Control Act at issue in *Magaw* delegated authority to the Secretary of the Treasury to make rules designating in greater specificity the requirements of the statute, and we found the plaintiffs' vagueness challenges to be premature due to the lack of any final agency action. *Id.* at 293. We explained that "a federal court should not intervene and determine whether a statute enacted by Congress is unconstitutionally vague on its face before the agency with rulemaking authority has had an opportunity to interpret the statute." *Id.*

*Magaw* does not affect our determination in this case that all of Plaintiffs' challenges to the Columbus ordinance (including the vagueness claims) are currently fit for review. In *Magaw,* we expressly distinguished our decision in *Springfield Armory* which had reached the merits of the plaintiffs' vagueness challenges to Columbus's previous assault weapons ordinance.[9] We noted in *Magaw* that the *Springfield Armory* "court was reviewing a city ordinance, not a federal statute enacted by Congress, and did not have to consider whether there had been 'final agency action' in regard to an interpretation of the provision alleged to be vague." *Id.* at 292. Like the City's prior assault weapons ordinance, the current law is not subject to any type of clarifying interpretation by a local administrative agency. Rather, the words of the ordinance provide the sole source of guidance for firearms' owners. Therefore, we conclude that Plaintiffs' vagueness challenges are fit for review.

### C.

For the above reasons, we hold that the district court correctly found that this matter presents a justiciable controversy under Article III. Plaintiffs Smolak and Walker have

---

8. Unlike the Columbus ordinance at issue here, the Crime Control Act contains a grandfather provision which permits the possession or transfer of *all* semiautomatic assault weapons and large capacity ammunition feeding devices that were lawfully possessed on the date of enactment. 18 U.S.C. § 922(v)(2), (w)(2).

9. We pointed out in *Magaw* that our opinion in *Springfield Armory* did not address the issue of justiciability. *See Magaw,* 132 F.3d at 292.

shown the significant possibility of future harm which is necessary to establish standing in a declaratory judgment action, *see Magaw,* 132 F.3d at 279, and Plaintiff P.R.O. has shown that it has associational standing in this case, *see Hunt,* 432 U.S. at 343, 97 S.Ct. 2434. In addition, the matter is currently ripe for judicial review. Plaintiffs Smolak and Walker have demonstrated the requisite hardship they and other similarly situated members of P.R.O. will suffer if judicial review is denied at the pre-enforcement stage, the likelihood that the harm alleged will come to pass, and the fitness of the issues raised for judicial review. *Magaw,* 132 F.3d at 284; *United Steelworkers,* 860 F.2d at 194–95.

We now proceed to consider the merits of Plaintiffs' claims. Plaintiffs challenge the grandfather provisions on equal protection grounds and the assault weapon prohibitions on vagueness grounds.

## II.

As noted, there are two grandfather provisions at issue in this case. The district court upheld both provisions. We shall address each one in turn.

 The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction, the equal protection of the laws." In *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992), the Supreme Court explained that "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." If legislation does not burden a fundamental right or target a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest. *Vacco v. Quill,* —— U.S. ——, ——, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997); *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

## A.

 Section 2323.31(B)(3) contains an exception to the prohibition on assault weapons in section 2323.31(A). Section 2323.31(B)(3) exempts from prosecution "any person who lawfully possessed an assault weapon and who registered that assault weapon pursuant to former Columbus City. Codes Section 2323.05 in 1989." Plaintiffs argue that "[t]his creates an irrational discrimination against plaintiffs and in favor of persons who did register their firearms because they speculated that their firearms were assault weapons ... capable of registration under the 1989 definitions."

The City contends that the objective of the provision is to protect the ownership interests of those persons who possessed proscribed weapons prior to Columbus's attempt to ban assault weapons in 1989. To be sure, the governmental interest at stake here is clearly legitimate. As the Seventh Circuit has explained: "Governments enact laws which invite citizens to invest their money and time and to arrange their affairs in reliance upon those laws. Laws are not immutable, but we can see no reason to prohibit governments from protecting the interests of those who rely upon prior law." *Sklar v. Byrne,* 727 F.2d 633, 641–42 (7th Cir.1984).[10]

The difficulty arises, however, in assessing whether the grandfather clause bears a rational relationship to this legitimate governmental interest. The benefits of this grandfather clause are available only to those persons who have registered their firearms as assault weapons under former section 2323.05. Section 2323.05 provided that "[a]ny person who lawfully possesses an assault weapon prior to October 31, 1989 shall register that firearm ... between November 1, 1989 and November 30, 1989." The problem is, of course, that our circuit found Columbus's former ordinance to be unconstitutionally vague on its face. *See Springfield Armory,* 29 F.3d at 251. Indeed, we concluded that "the ordinance is fundamentally irrational and impossible to apply consistently by the buying public, the

---

**10.** The Supreme Court has approved the legitimacy of reliance interests. *See City of New Orleans v. Dukes,* 427 U.S. 297, 305, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (upholding a grandfather clause which protected established businesses and eliminated newer competition).

sportsman, the law enforcement officer, the prosecutor or the judge." *Id.* at 252. Thus, the City's grandfather provision is predicated upon an ordinance that we previously invalidated, precisely because it failed to place firearms' owners on notice as to whether or not their firearms were "assault weapons." Hence, it necessarily follows that firearms' owners were not given sufficient notice under the former ordinance of the need to register their weapons. This is to say nothing of the fact that the challenged ordinance is broader than its predecessor and presumably encompasses firearms which were not included under the prior law. These owners obviously would have had no reason to register their weapons in 1989.[11]

Rational basis review, while deferential, is not "toothless." *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). In *Evans,* the Supreme Court explained: "[E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause." *Evans,* 517 U.S. at 632, 116 S.Ct. 1620. The rational basis test requires the court to ensure that the government has employed rational means to further its legitimate interest. *Quill,* —— U.S. at ——, 117 S.Ct. at 2297. The grandfather provision at issue here "fails, indeed defies, even this conventional inquiry." *Evans,* 517 U.S. at 632, 116 S.Ct. 1620. There simply exists no rational distinction between the individual plaintiffs in this case and those persons who registered their firearms during a thirty day window in 1989 on the basis of little more than a hunch that their firearms might con-

stitute "assault weapons" under the City's unconstitutionally vague ordinance. *See Quill,* —— U.S. at ——, 117 S.Ct. at 2297 (the Equal Protection Clause "embodies a general rule that States must treat like cases alike"). Therefore, we hold that section 2323.31(B)(3) violates the Equal Protection Clause and is unconstitutional.[12]

**B.**

■■■ The second grandfather provision exempts any large capacity magazine

> which belongs to a firearm or which is possessed by the owner of a firearm which is registered with federal authorities under the National Firearms Act (26 U.S.C.A. Secs. 5801–5871), or if the large capacity magazine belongs to or is part of an assault weapon which has been registered under Section 2323.05(C) or has been rendered totally inoperable or inert and the firearm cannot be readily rendered operable or activated and which is kept as a trophy, souvenir, curio or museum piece.

C.C.C. § 2323.32(B)(3). Of course, to the extent this provision grants an exemption "if the large capacity magazine belongs to or is part of an assault weapon which has been registered under Section 2323.05," it is invalid for the reasons stated in Part II–A of our opinion. With respect to the remainder of the provision, Plaintiffs contend that it allows individuals who have *any* firearm registered with federal authorities to possess an infinite number of magazines, even if those magazines are not designed for the registered weapon. According to Plaintiffs, this irrationality discriminates against individuals who have no firearms registered with the Federal Government. We disagree.

---

**11.** On the basis of the City's answers to interrogatories, we note that 119 individuals registered assault weapons in 1989. The answers indicate that "there were no specific regulations adopted by the Director of Public Safety," and "no weapons were refused the opportunity to be registered." Of course, our analysis is not affected by the fact that the City's director registered every weapon presented regardless of whether he believed it fell within the purview of the ordinance. It is the terms of the ordinance, rather than an unwritten policy, that controls.

**12.** In contrast, we note that the grandfather provision in the federal Crime Control Act permits the possession or transfer of all semiautomatic assault weapons and large capacity ammunition feeding devices that were lawfully possessed on the date of the statute's enactment. *See* 18 U.S.C. § 922(v)(2), (w)(2). However, we do not suggest that only blanket provisions, such as those in the Crime Control Act, will pass constitutional muster.

■ Individuals who have registered firearms with the Federal Government legitimately expect that they are entitled to the possession and use of those firearms, as well as any related components. In our view, the City could rationally choose to protect these reliance interests through the use of a grandfather provision like the instant one. Legislation generally is presumed constitutional despite the fact that, in practice, it may result in some inequality. *Nordlinger*, 505 U.S. at 10, 112 S.Ct. 2326; *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). This presumption is clearly warranted here, as the City has not drawn a distinction along any constitutionally suspect (e.g. racial or religious) lines. Rather, the City has reserved the benefits of its grandfather provision, in part, for those individuals who have a firearm registered with the Federal Government. This is perfectly acceptable. Thus, we conclude that section 2323.32(B)(2), with the exception of the clause which conditions exemption upon registration under the former ordinance, satisfies the requirements of the Equal Protection Clause and passes constitutional muster.

Having decided the equal protection challenges to the City's two grandfather provisions, we now turn to Plaintiffs' vagueness challenges to the definitions of "assault weapon" in section 2323.11(G). We begin with a discussion of the governing legal principles.

### III.

### A.

■ It is a fundamental component of due process that a law is void-for-vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The Supreme Court has explained that vague laws offend several important values:

First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Id.* (footnotes omitted); *accord Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 197 (6th Cir.1997), *cert. denied,* ⸺ U.S. ⸺, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998); *Springfield Armory*, 29 F.3d at 251.

■ In *Springfield Armory*, this circuit noted that "[a]t times the [Supreme] Court has suggested that a statute that does not run the risk of chilling constitutional freedoms is void on its face only if it is impermissibly vague in all its applications, ... but at other times it has suggested that a criminal statute may be facially invalid even if it has some conceivable application." *Springfield Armory*, 29 F.3d at 251–52 (citing *Kolender v. Lawson*, 461 U.S. 352, 358–59 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); and *Colautti v. Franklin*, 439 U.S. 379, 394–401, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979)). "We therefore must keep in mind that '[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment.'" *Women's Medical Professional Corp.*, 130 F.3d at 197 (quoting *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186).[13] When criminal penalties are at stake, for instance, a relatively strict test is warranted. *Hoffman Estates*, 455 U.S. at 498–99, 102 S.Ct. 1186; *Women's Medical Professional Corp.*, 130 F.3d at 197; *Springfield Armory*, 29 F.3d at 252.

---

**13.** In *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court stated that "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." This concern is not present in this case. Nevertheless, as we made clear in *Springfield Armory*, 29 F.3d at 254, "the question of whether or not a statute impinges on constitutionally-protected activity is but the first inquiry in a court's examination of a statute challenged on vagueness grounds."

We also must consider whether the statute contains a scienter requirement or imposes strict liability. *Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. 1186. Indeed, "[i]n the absence of a scienter requirement ... [a] statute is little more than 'a trap for those who act in good faith.' " *Colautti,* 439 U.S. at 395, 99 S.Ct. 675 (quoting *United States v. Ragen,* 314 U.S. 513, 524, 62 S.Ct. 374, 86 L.Ed. 383 (1942)). Section 2323.31(A) provides that "[n]o person shall sell, offer or display for sale, give, lend or transfer ownership of, acquire or possess any assault weapon." This provision clearly does not contain an explicit scienter requirement. Nevertheless, the City now relies, for the first time on appeal, upon a default scienter provision in section 2301.21(B). This provision provides:

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

C.C.C. § 2301.21(B). Section 2301.22 defines culpable mental states and provides, in relevant part:

> A person acts recklessly when with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

*Id.* § 2301.22(C). The City contends that this default rule is applicable here, because section 2323.31(A) neither specifies culpabili-

ty nor plainly indicates a purpose to impose strict liability. We do not agree.

In our view, section 2323.31(A) "plainly indicates a purpose to impose strict liability." *Id.* § 2301.21(B). Several reasons support our conclusion. First, in 1989, the City enacted former Columbus City Codes sections 2305 and 2306. Section 2305 prohibited individuals from *knowingly* selling or possessing an assault weapon, *see* former C.C.C. § 2305(A)-(B), and section 2306 prohibited them from *knowingly* possessing a large capacity magazine, *see* former C.C.C. § 2306(A). After our decision in *Springfield Armory,* the City enacted section 2323.31(A), which contains no scienter requirement. At the same time, the City retained the scienter requirement for its prohibition on large capacity magazines. *See* C.C.C. § 2323.32(A) (re-codification of former section 2323.06(A)). Assuming the City intended to include a scienter requirement in section 2323.31(A), it presumably would have done so explicitly, as it did in the succeeding section. Indeed, it appears from a review of its ordinances that the City is perfectly capable of including a scienter requirement where one is desired. Compare C.C.C. § 2323.19(A) ("No person, in acquiring, possessing, carrying, or using any dangerous ordnance, shall negligently fail to take proper precautions."), and C.C.C. § 2323.12(A) ("No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon."), with § 2323.15(A) ("No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance.").

Given the criminal penalties available for violation of section 2323.31(A) and the absence of a scienter requirement, we conclude that a relatively stringent review of the City's assault weapons ban is necessary.[14]

---

14. In any event, we note that the application of the default rule would not affect our decision that a relatively strict review of section 2323.31(A) is necessary. "A person acts recklessly when with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." C.C.C. § 2323.22(C). In our view, the application of a recklessness scienter to section 2323.31(A) would not ameliorate the vagueness problems in this ordinance and would appear to be inconsistent with the City's goal to ban all assault weapons with the exception of those firearms which fall within the City's grandfather's provisions. Indeed, under this vague ordinance,

## B.

Section 2323.11(G) defines "assault weapon" as

(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;

(2) any semiautomatic shotgun with a magazine capacity of more than six rounds;

(3) any semiautomatic handgun that is:

(a) a modification of a rifle described in division (a)(1), or a modification of an automatic firearms [sic]; or

(b) originally designed to accept a detachable magazine with a capacity of more than 20 rounds.

(4) any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2), or (3) of this section.

(5) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (G)(1), (2), or (3) of this section, or any combination of parts from which an assault weapon as defined in (G)(1), (2) or (3) of this section, [sic] may be readily assembled if those parts are in the possession or under the control of the same person.

C.C.C. § 2323.11(G). The district court found the definitions in sections 2323.11(G)(1), (G)(3), (G)(4), and certain portions of (G)(5) to be unconstitutionally vague. The City appeals from this determination, and Plaintiffs cross-appeal with respect to those provisions upheld by the district court. For the reasons set forth below, we find all the definitions to be unconstitutionally vague.

### (1)

Plaintiffs contend that section 2323.11(G)(1) is unconstitutionally vague, because it fails to provide sufficient information to enable a person of average intelligence to determine whether a particular firearm is included within its prohibition. *See Springfield Armory*, 29 F.3d at 253. In particular, Plaintiffs challenge the phrase "that accepts a detachable magazine with a capacity of 20

rounds or more." Plaintiffs point out that the ordinance is unclear as to which of the following four alternatives is correct: (1) The owner must actually possess a detachable magazine with a twenty round capacity; (2) the weapon, as manufactured and sold, included a twenty round magazine; (3) the owner does not possess a twenty round magazine, but one is commercially available; or (4) a twenty round magazine is unavailable or does not exist, but one would fit the weapon if it existed. The City appears to concede in its brief that the twenty round magazine must exist, as it states that "it would seem next to impossible to ever prove someone guilty of violating the code without having the detachable magazine with a capacity of 20 rounds or more to fit a particular weapon."

The crux of the City's position is that the ordinance contains a scienter requirement, which the City describes as a "knowledge of recklessness" standard. We have already found that the ordinance imposes strict liability. In any event, the contours of the City's alleged scienter requirement are themselves unclear. On the one hand, the City states that: "if you possess any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of twenty rounds and if the person has some knowledge of a magazine which qualifies under the definition then the weapon is an assault weapon." On the other hand, in the same paragraph of its brief, the City also states:

One does not have to know that somewhere on this planet there may exist a detachable magazine which might fit the weapon in question to make it an assault weapon but one does have to have some knowledge that there exist detachable magazines which fit the weapon in question in order to have violated the ban on assault weapons.

Needless to say, this novel scienter provision would not help to cure the problems inherent in this provision.

As currently written, the provision is little more than a trap for the unwary. The rec-

---

we question whether one could be found to have "perversely disregard[ed] a known risk," *id.,* that

he possesses an "assault weapon" merely by virtue of possessing a firearm in the first place.

ord indicates that any semiautomatic rifle that accepts a detachable magazine will accept a detachable magazine of any capacity which might exist, as it is the magazine, and not the rifle, that determines capacity. Therefore, anyone who possesses a semiautomatic center fire rifle or carbine that accepts a detachable magazine is subject to prosecution so long as a magazine exists with a capacity of twenty rounds or more. Since the ordinance contains no scienter requirement, an owner's complete lack of knowledge as to the magazine's existence is of no consequence. Plaintiff Smolak is a perfect example. Smolak states in an affidavit that he owns a hunting rifle that has a detachable magazine with a capacity of four rounds and that he has never possessed or seen any other magazine which would fit his rifle. However, Smolak also states that his rifle would accept a detachable magazine with a capacity of twenty rounds or more if one has ever been manufactured. Under the current ordinance, Smolak presumably would face criminal penalties in the event such a magazine is discovered. Due process demands more than this.

In addition, since the capacity of a detachable magazine is limited only by the availability of a large capacity magazine, all owners of semiautomatic center fire rifles and carbines with detachable magazines are in jeopardy of prosecution if a compatible large capacity magazine is discovered or manufactured. This presumably was not the intention of the Columbus City Council when it passed this ordinance. Indeed, if it had, the City simply could have banned the possession or transfer of any semiautomatic center fire rifle or carbine which accepts a detachable magazine.

In sum, the definition of "assault weapon" in section 2323.11(G)(1) is unconstitutionally vague.

### (2)

■ Section 2323.11(G)(2) defines "assault weapon" to include "any semiautomatic shotgun with a magazine capacity of more than six rounds." The district court upheld this definition, rejecting Plaintiffs' argument that the provision fails to define the length of round to be used in determining whether the weapon's magazine has a capacity of more than six rounds. The court concluded that an owner is warned that a semiautomatic shotgun with a magazine capacity of more than six rounds *of any length* is prohibited. *Peoples Rights Org.*, 925 F.Supp. at 1266. We disagree. Tellingly, the City's sole argument in defense of this provision is the existence of a scienter requirement, a position we have squarely rejected.

Shotgun rounds are available in different lengths.[15] Rounds of a short length may cause a shotgun's magazine capacity to exceed six rounds. Conversely, rounds of a longer length (which may be all the owner possesses or is aware of) will result in a capacity that is less than six rounds. This provision is a trap for the unwary. It imposes criminal liability regardless of whether a shotgun owner knows of the existence of shorter length rounds. Hence, we find this definition unconstitutionally vague.

### (3)

■ Section 2323.11(G)(3) prohibits three classes of semiautomatic handguns. Subsection (G)(3)(a) defines an "assault weapon" as a semiautomatic handgun which is (i) a modification of a rifle described in subsection (G)(1), and (ii) a modification of an automatic firearm.[16] Subsection (G)(3)(b) defines an "assault weapon" as a semiautomatic hand-

---

**15.** For instance, the record indicates that 12 gauge shotgun shells are available in the following lengths: 2″, 2½″, 2 3/4″, 3″, and 3½″. The drafters of the ordinance apparently recognized that rounds of other types are available in different lengths. *See* C.C.C. § 2323.11(E) (" 'Automatic firearm' also means any semiautomatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges.").

**16.** Section 2323.11(E) provides:

"Automatic firearm" means any firearm designed or specifically adapted to fire a succession of cartridges with a single function of the trigger. "Automatic firearm" also means any semiautomatic firearm designed or specifically adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges.

gun originally designed to accept a detachable magazine with a capacity of more than twenty rounds. The district court held the entire provision invalid. The City did not address this particular provision in its brief.

We agree with the district court that this provision is unconstitutional. The first and third definitions in subsection (G)(3) are, of course, constitutionally infirm for the same reasons that support our conclusion that section 2323.11(G)(1) is unconstitutional. *See supra* at pp. 534–35.

The second definition in section 2323.11(G)(3)(a) bans semiautomatic handguns which are a modification of an automatic firearm. The district court correctly held that the term "modification" is unduly vague.[17] This conclusion is consistent with our opinion in *Springfield Armory,* which explained that "[o]rdinary consumers cannot be expected to know the developmental history of a particular weapon." *Springfield Armory,* 29 F.3d at 253. In that case, we stated:

> Nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage. *See Robertson v. City and County of Denver,* 874 P.2d 325, 335 (Colo.1994) (holding similar provision invalid because "ascertaining the design history and action design of a pistol is not something that can be expected of a person of common intelligence.") The record indicates that the average gun owner knows very little about how his gun operates or its design features.

*Id.* Similarly, the evidence in this case indicates that an average gun owner does not know whether or not his weapon is a modification of another weapon. *See Peoples Rights Org.,* 925 F.Supp. at 1268. The situation is compounded by the absence of a scien-

ter requirement in section 2323.31(A). In short, the definitions of "assault weapon" in section 2323.11(G)(3) are unconstitutionally vague.

### (4)

Section 2323.11(G)(4) defines an "assault weapon" as "any firearm which may be restored to an operable assault weapon as defined in divisions (G)(1), (2), or (3) of this section." Since we have found the definitions of assault weapon in subsections (G)(1), (2), and (3) to be unconstitutionally vague, it follows that subsection (G)(4) is equally void-for-vagueness. In addition, like the district court, we find subsection (G)(4) to be unconstitutionally vague in its own right inasmuch as the phrase "may be restored" fails to provide sufficient guidance to a person of average intelligence as to what is prohibited. *See id.* The City contends that "[t]he phrase 'may be' means just what it says. If the weapon 'may be' or is capable of being restored to operate as an assault weapon, then it is an assault weapon. There is nothing confusing about that language." This reasoning begs the question, as the provision provides absolutely no guidance for interpreting the phrase "to be restored." *See id.* ("No standard is provided for what 'may be restored[ ]' [means,] such as may be restored by the person in possession, or may be restored by a master gunsmith using the facilities of a fully-equipped machine shop.") (internal quotations omitted). Therefore, we agree with the district court that the provision, which imposes strict liability, violates the constitutional requirement that a law give fair warning of that which it prohibits.

### (5)

Finally, section 2323.11(G)(5) defines an "assault weapon" as

> any part, or combination of parts, designed or intended to convert a firearm into an

---

17. The district court noted, among other things, the affidavit of Plaintiffs' expert witness, which stated, in part:

A reasonable person has no way to know whether a handgun is a modification of an "automatic firearms." Does this mean that a specific handgun was converted from an auto-

matic firearm into a semiautomatic firearm? Does this mean that a manufacturer produced a type of automatic firearm, and then produced a modified version of it as a handgun? *Peoples Rights Org. v. City of Columbus,* 925 F.Supp. 1254, 1267 (S.D.Ohio 1996) (internal quotations omitted).

assault weapon as defined in divisions (G)(1), (2) or (3) of this section, or any combination of parts from which an assault weapon as defined in divisions (G)(1), (2) or (3) of this section, may be readily assembled if those parts are in the possession or under the control of the same person.

The district court upheld the first portion of this provision to the extent it defines an "assault weapon" to include any part or combination of parts that is designed or intended to convert a firearm into an "assault weapon" as defined in section 2323.11(G)(2). The court declared the remainder of the provision unconstitutionally vague.

Of course, since we have invalidated each of the definitions of "assault weapon" in section 2323.11(G)(1)-(3), it necessarily follows that the entire provision is invalid. Moreover, we agree with the district court for the reasons stated in its opinion that the second portion of subsection (G)(5) is unduly vague in its own right inasmuch as the phrase "may be readily assembled" does not provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts is within the ordinance's coverage. *See id.* at 1268–69.

For the foregoing reasons, section 2323.31(A) is unconstitutionally vague as applied to each of the definitions of "assault weapon" in section 2323.11(G).

### C.

We also reject the City's argument that our decision in *Springfield Armory* necessarily approved of the assault weapons ordinance at issue here. In *Springfield Armory*, we invalidated on vagueness grounds the City's previous ordinance, which defined an "assault weapon" as any one of thirty-four specific rifles, three specific shotguns, nine specific pistols, or "[o]ther models by the same manufacturer with the same action design that have slight modifications or enhancements." *Springfield Armory*, 29 F.3d at 251 (quoting former C.C.C. § 2323.01(I)(4)). We stated in dicta that "[t]hese vagueness problems are not difficult to remedy. The subject matter does allow

for more exactness. It is not a case in which greater specificity would interfere with practical administration." *Id.* at 253. We explained that the City had many options available for effectively pursuing its stated goals, and we noted that other gun control laws which seek to prohibit assault weapons provide a general definition of the type of weapon banned. *See id.* (citing Cleveland Ordinance No. 415–89 § 628.02; and H.R. 4296, 103rd Cong., 2d Sess., § 2 (1994)). Columbus points out that Cleveland's ordinance served as the model for the instant one and that the Ohio Supreme Court upheld the validity of Cleveland's ordinance in *Arnold v. City of Cleveland,* 67 Ohio St.3d 35, 616 N.E.2d 163 (1993).

At the outset, we note that the above dicta from our opinion in *Springfield Armory* was not meant to sanction our approval of any particular piece of legislation, but instead was merely an attempt to illustrate the possibility of using generic definitions. In addition, as the City itself acknowledges, the Ohio Supreme Court in *Arnold* did not consider a vagueness challenge to the ordinance in question. Rather, the state supreme court rejected the argument that Cleveland's ordinance was an overly broad restriction on the plaintiffs' rights under the Ohio Constitution to bear arms and defend themselves, and the court upheld the ordinance as a proper exercise of the police power. *Id.* at 173. This is not inconsistent with our holding today. We agree with the district court that the City's ordinance does not violate the right of Plaintiffs to bear arms under the Ohio Constitution. *See Peoples Rights Org.*, 925 F.Supp. at 1269–70. Moreover, we note that the Federal Constitution does not provide a right to possess an assault weapon. *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp,* 965 F.2d 723, 729–30 (9th Cir.1992); *see also Stevens v. United States,* 440 F.2d 144, 149 (6th Cir.1971) ("there can be no serious claim to any express constitutional right of an individual to possess a firearm."), *disapproved on other grounds by United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).[18] Nevertheless,

---

**18.** This circuit has explained that "the Second

Amendment guarantees a collective rather than

it is well established that due process protects our citizens from vague legislation even when that legislation regulates conduct which otherwise does not enjoy constitutional protection. *See Hoffman Estates,* 455 U.S. at 497–99, 102 S.Ct. 1186; *Springfield Armory,* 29 F.3d at 254. It is for this reason—and not on the basis of any constitutional right to possess an assault weapon—that the City's ordinance fails.[19]

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court upholding the constitutionality of the grandfather provision in Columbus City Codes section 2323.32(B)(2) (with the exception noted in our opinion); and **REVERSE** the court's judgment upholding the constitutionality of the grandfather provision in section 2323.31(B)(3). In addition, we **AFFIRM** the judgment of the district court holding section 2323.31(A) of the Columbus City Codes unconstitutionally vague as it applies to the definitions of "assault weapon" in section 2323.31(G)(1), (G)(3), (G)(4), and the designated portions of (G)(5); and **REVERSE** the court's judgment upholding the constitutionality of section 2323.31(A) as it applies to the definitions of "assault weapon" in section 2323.11(G)(2) and the designated portion of (G)(5). Hence, the district court's judgment is **AFFIRMED IN PART AND REVERSED IN PART.**

MERRITT, Circuit Judge, dissenting.

The City of Columbus has attempted to correct the incoherent provisions in its old gun control law that I said were unconstitutional in *Springfield Armory,* 29 F.3d 250 (6th Cir.1994). No longer does the ordinance simply and irrationally outlaw certain brand named guns, or any modifications thereof, leaving untouched the same type weapons with other brand names. Now the City has used generic definitions. That corrects the main problem I had with the earlier ordinance.

It is true, as the court says, that the new ordinance leaves a lot of questions concerning the scope of the ordinance up in the air. But the Ohio courts could correct most of those problems by imposing a scienter requirement and giving a narrow scope to the "accepts-a-detachable-magazine" provisions for example, by saying that such a magazine must be readily available for purchase. Neither do the grandfather provisions seem unfair to me. They are based on a gun owner's reliance on prior law, a rational distinguishing characteristic.

My main objection to the panel's decision is that I do not believe that the case is ripe for decision. We did not have the ripeness issue before us in *Springfield Armory.* There are some applications of the ordinance that could be unconstitutional, as the panel has noted, but that is true of many laws. I would wait until the statute is applied in an enforcement proceeding before making a judgment. In most of its applications, assuming a scienter requirement is imposed, the ordinance will be valid. The ordinance is therefore not invalid on its face, as was the earlier ordinance. It is clearly possible to narrow enforcement to assault weapons

an individual right." *United States v. Warin,* 530 F.2d 103, 106 (6th Cir.1976); *see United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939) (the Second Amendment guarantees no right to keep and bear a firearm that does not have "some reasonable relationship to the preservation or efficiency of a well regulated militia"). In any event, we note that the Second Amendment could not apply to this case. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment does not incorporate the Second Amendment; hence, the restrictions of the Second Amendment operate only upon the Federal Government. *Presser v. Illinois,* 116 U.S. 252, 264–65, 6 S.Ct. 580, 29 L.Ed. 615 (1886); *United States v. Cruikshank,* 92 U.S. 542, 553, 23 L.Ed. 588 (1875).

19. We also note that section 2 of H.R. 4296, which we cited in *Springfield Armory,* would have banned as "assault weapons" semiautomatic rifles, pistols, and shotguns that can accept magazines of more than five rounds and that have at least two of a number of different listed features. *See Springfield Armory,* 29 F.3d at 253. However, the legislation ultimately enacted bans semiautomatic rifles that have "an ability to attach a detachable magazine" and have at least two of five other specified characteristics. 18 U.S.C. § 921(a)(30)(B); *see Magaw,* 132 F.3d at 277. Thus, the phrase "that can accept magazines of more than five rounds" was deleted.

knowingly possessed. I would wait and see how the law is applied and not try to answer a host of hypothetical questions in a long opinion in a declaratory judgment case. I would wait for a real case. I believe the case law supports the proposition that we should not normally adjudicate void for vagueness claims in pre-enforcement, declaratory judgment actions when the statute is not invalid on its face but only in certain applications. That is what the Supreme Court seems to say in *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), and what our court says in *NRA v. Magaw,* 132 F.3d 272, 293 (6th Cir.1997).